UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| DAVID M. ROBERTS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 16-053-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL,* | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff David Roberts and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security.  [Record Nos. 14, 16]  Roberts contends that the administrative law judge ("ALJ") assigned to his case erred by denying his claim for supplemental security income benefits ("SSI").  [Record No. 14]  He requests that the decision be reversed and that a judgment be entered finding him disabled.  [*Id.* at 11]  In the alternative, Roberts requests that his case be remanded for additional findings.  [*Id.*]  The Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed.  [Record No. 16]

For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Roberts.

---

\*     As of January 23, 2017, Nance A. Berryhill is the Acting Commissioner of Social Security, and is substituted as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

**I.**

Roberts filed an application for SSI under Title XVI of the Social Security Act ("the Act") on October 18, 2013, alleging a disability beginning on April 28, 2012.  [Administrative Transcript, "Tr.," at 140]  The Social Security Administration ("SSA") denied his application initially and upon reconsideration.  [Tr. at 79, 90]   Roberts pursued and exhausted his administrative remedies with an administrative hearing before an ALJ [Tr. at 23], a written decision from the ALJ [Tr. at 11], and review by the Appeals Council [Tr. at 1].  His case is now ripe for review pursuant to 42 U.S.C. § 1383(c)(3).

Roberts was 54 years old at the time of the ALJ's decision and has a high school equivalency ("GED") education.  [Tr. at 17]  Roberts worked on-and-off as a commercial carpenter for thirty-five years.  [Tr. at 28-32, 79]  He stopped working in 2012 following a rotator cuff injury.  [Tr. at 32-33]  At the time of the administrative hearing, Roberts lived with his mother, was able to drive himself and do his own shopping, and assisted with household chores, including cooking dinner.  [Tr. at 27, 39, 51-52]

Roberts contends that he is unable to work as a result of chronic pancreatitis and his shoulder injury.  [Tr. at 34-35]  According to his testimony, he has no trouble walking, and is able to lift a coffee cup to his mouth with his right hand.  [Tr. at 35]  He testifies that he is right-handed, and unable to lift a gallon of milk, run a vacuum cleaner, or do anything more strenuous with his dominant hand.  [Tr. at 35-36]  Specifically, he reports being unable to drive-in a nail or use a drill with his right hand, and that it is very awkward for him to do so with his left hand.  [Tr. at 52]

Roberts testified that has flare-ups of pancreatitis once or twice a month. [Tr. at 50] They last anywhere from two to four days, he reports, and during that time he is unable to walk, eat, or do anything. [Tr. at 50-51] He describes the pain as "feel[ing] like somebody's poured hot metal into [his] stomach." [Tr. at 50] Roberts also testified to suffering from insomnia and depression. The depression, he contends, causes him to cry, but has been better with medication. [Tr. at 39-40] He also reports insomnia, which he sometimes attempts to treat by consuming alcohol. [Tr. at 54] Roberts testified that he discontinued insomnia medication after it caused severe side-effects, such as using kitchen appliances in his sleep. [Tr. at 55]

On November 15, 2013, Casey Alsop, S.D.M., reviewed Roberts's file. He provided an opinion regarding Roberts's residual functional capacity ("RFC") and made a disability finding. [Tr. at 71-79] He stated that Roberts could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, but that pushing and pulling was limited with Roberts's right-upper extremity. [Tr. at 76] Alsop believed that Roberts could stand and/or walk for a total of six hours in an eight-hour day. [*Id.*] Further, he indicated that Roberts could occasionally climb ramps and stairs, and frequently stoop, kneel, and crouch, but that he could never climb ladders ropes or scaffolds, and could never crawl. [Tr. at 76-77] Alsop opined that Roberts was limited in reaching overhead with his right hand, but that his handling, fingering, and feeling was unlimited. [Tr. at 77] Based on the seven strength factors, Alsop found Roberts capable of performing light work, and ultimately determined that Roberts was not disabled. [Tr. at 79]

As part of the reconsideration of Roberts's initial denial, Dr. Sudhideb Mukherjee, M.D., reviewed Roberts's file on January 22, 2014, and provided his opinion regarding

Roberts's RFC.  [Tr. at 86-89]  Dr. Mukherjee's opinion mirrored that of Alsop.  [*Id.*]  During

this reconsideration, Roberts was again found capable of light work, and was deemed not

disabled.  [Tr. at 90]

ALJ Kevin Detherage issued a decision on June 1, 2015, finding that Roberts has not

been under a disability since October 18, 2013 (the date of his application).  [Record No. 18]

The ALJ found that Roberts suffers from the following severe impairments: history of right

shoulder rotator cuff tear, pancreatitis, GERD, hypertension, substance abuse disorder

(alcohol), and depression.  [Tr. at 13]  The ALJ found that none of the claimant's disorders

meet or medically equal a listed impairment.  [Tr. at 14]  Specifically, the shoulder impairment

does not meet listing 1.02(B)—Major Dysfunction of Joints for Any Cause—because only one

upper extremity is involved.  [*Id.*]  The ALJ also determined that Roberts's pancreatic

condition does not meet any of the 5.00 listings for the digestive system.  [*Id.*]  Finally, the

ALJ concluded that the claimant's depression and substance abuse do not meet the severity

requirements for 12.04, Affective Disorder, or for 12.09, Substance Addiction Disorder.  [*Id.*]

The ALJ determined that Roberts's medically determinable impairments could

reasonably be expected to cause the symptoms he alleges (i.e., persisting right-arm limitations

and incapacitating pancreatic flare-ups), but that his allegations regarding intensity,

persistence, and limiting effects are not fully credible.  [Tr. at 15]  Specifically, with regard to

shoulder pain, the ALJ discussed the medical reports of claimant's treating physician, Dr.

Holladay.  In a September 2013 examination, Dr. Holladay reported that Roberts had a full

range of motion with his right shoulder, and that his strength was "very good."  [*Id.*]  During

that same examination in the fall of 2013, Roberts self-reported that he could lift a gallon of

milk above his head without bending his elbow, that he could carry a 20-pound bag of potatoes

at his right side, and that his shoulder allowed him to return to work full-time at his regular job. [*Id.*] In his final visit to Dr. Holladay on October 4, 2013, Roberts was given permission to return to work at full duty. [*Id.*] The ALJ noted that Dr. Holladay was surely aware of the intensity of claimant's previous work duties, yet imposed no restrictions on use of his right arm for lifting, carrying, pushing or pulling, or reaching. [Tr. at 15-16] Roberts claims to still have a limited range of motion and pain in his right shoulder, yet he has never returned to Dr. Holladay or sought further treatment for shoulder pain. [Tr. at 16] Treatment records of Roberts's current physician show no ongoing complaints of shoulder pain. [*Id.*]

Regarding pancreatic-flare ups, the ALJ found that Roberts downplays the extent of his drinking, and is not credible in denying the relationship between the flare-ups and his ongoing alcohol use. [Tr. at 16] The ALJ further discounted Roberts's credibility in light of his spotty work history and his failure to seek any work following recovery from his shoulder surgery. [*Id.*]

The ALJ concluded that Roberts retains the exertional capacity for medium work. [Tr. at 16] The ALJ gave reduced weight to the contrary opinions of the agency consultants. [*Id.*] Dr. Mukherjee did not personally examine Roberts, and the ALJ found Mukherjee's opinion contrary to the evaluations of treating-physician Dr. Holladay. [*Id.*] The ALJ determined that, based on Roberts's age, education, work experience, and RFC, he is capable of adjusting to other jobs that are numerous in the regional and national economy. [Tr. at 18] They include hand packer, folder/stacker, and inspector/tester/sorter. [Tr. at 18-19]

## II.

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one

year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. § 416.920(b).  Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 416.1520(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience.  20 C.F.R. § 416.920(d).  Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work.  If he can, he is not disabled.  20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work.  If he cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. § 404.416.920(g).  "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work

-6-

available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A court reviewing a denial of Social Security benefits must only determine whether the ALJ's findings were supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

#### A.      The ALJ Did Not Err in Weighing Opinion of Medical Consultant.

Roberts contends that it was improper for the ALJ to discount the non-examining agency consultant's opinion on account of statements by treating physicians. As an initial matter, the ALJ need not provide reasons for discounting a non-treating source opinion. *See Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 259 (6th Cir. 2016) ("But because Dr. Rutledge and Dr. Joslin are non-treating sources, the reasons-giving requirement is inapplicable to their opinions."); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("[T]he SSA requires ALJs to give reasons for only treating sources."). Even so, the ALJ specifically explained why he discounted the consultant's opinion. And there was nothing improper about using treating-source records as a basis for doing so.

The ALJ found consultant Dr. Mukherjee's opinion contrary to the evaluations of treating-physician Dr. Holladay. [Tr. at 16]  Specifically, the ALJ gave reduced weight to Dr.

Mukherjee's opinion of light work based on Roberts's limited ability to use his right shoulder. The ALJ found this shoulder limitation contrary to the treatment records showing recovery to a full-range of motion shoulder motion, and strength to be "very good." [Tr. at 303] Roberts was cleared to return to work at full duty [Tr. at 302], and he never again sought treatment for shoulder ailments. [Tr. at 16] Roberts also self-reported that he could lift a gallon of milk above his head without bending his elbow, that he could carry a 20-pound bag of potatoes at his right side, and that his shoulder allowed him to return to work full time at his regular job. [305]

Moreover, the ALJ cited good reasons to doubt Roberts's credibility regarding his shoulder pain and the debilitating nature of his pancreatic flare-ups. In February 2015, Roberts admitted to his gastroenterologist that he was still drinking daily. [Tr. at 451] The physician warned him that if he continued to consume alcohol, there was no treatment that could help him. [Tr. at 453] Another treating physician, Dr. Leverage, opined that Roberts was still drinking fairly heavily, and that he was minimizing his alcohol use. [Tr. at 453] Roberts, however, denied in his testimony that he continued to drink heavily, or that his pancreatic issues were related to his alcohol consumption. [Tr. at 45]

**B.      The ALJ Did Not Fail to Properly Consider a Borderline Situation.**

Roberts contends that the ALJ found a less restrictive RFC in order to avoid a borderline situation under 20 C.F.R. § 404.1563. According to his argument, if he were found to be limited to light work and was classified as advanced age, he would be disabled under Medical-Vocational § 202.04. The claimant is correct regarding application of the Medical-Vocational Rule. Roberts was a few months shy of his 55th birthday on the date of the ALJ's decision. Given his level of education and agreed-upon inability to perform his previous work, if he

-8-

were found to be capable of only light work, he could be found disabled under § 202.04 of the "grid," because he would be a few months shy of advanced age and, therefore, eligible to be classed as such under 20 C.F.R. § 404.1563.   Roberts's argument, however, is baseless because the ALJ's RFC finding is supported by substantial evidence.

The ALJ discussed the borderline situation with the vocational expert during the hearing, and acknowledged that Roberts was close to "gridding out" at light work.  [Tr. at 60] The ALJ went on to address the Medical-Vocational Rule in his opinion, but did not address a borderline situation.  No borderline situation was presented but even if it was, ALJ's are not obligated to explain their reasoning regarding borderline situations.  *See Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008) (discussing an ALJ's obligations to consider possible borderline situations).

### C.    The ALJ's Decision is Supported by Substantial Evidence.

Roberts argues that the ALJ presented a misleading hypothetical to the vocational expert, which undermines the ALJ's determination regarding available jobs.  This argument is baseless.  The hypothetical question presented included the limitations found credible by the ALJ, and nothing more is required.  *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact.").

The ALJ presented two hypotheticals to the vocational expert—both at the medium, unskilled, level of exertion—but one with "frequent" and the other with "occasional" reaching and pulling with the right upper extremity.  [Tr. at 56-60]  The vocational expert reported available jobs in the national and regional economy at the frequent level of exertion with the right upper extremity, but reported no available jobs when limited to only occasional.  [*Id.*]

-9-

The ALJ ultimately found Roberts to be limited to frequent use of his right upper extremity, a finding supported by substantial evidence. The claimant apparently believes the vocational expert should have been presented with hypotheticals reflecting the agency consultant's proposed limitations. These would include the "occasional" limitations, but also a limitation to a "light" level of exertion. It is unclear what would be gained from further hypotheticals. This procedural argument is merely an alternatively-constructed challenge to the ALJ's RFC findings. And the ALJ's findings are supported by substantial evidence. Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Nancy A. Berryhill's Motion for Summary Judgment [Record No. 16] is **GRANTED**.

2. Plaintiff David Roberts's Motion for Summary Judgment [Record No. 14] is **DENIED**.

3. The administrative decision will be **AFFIRMED** by a separate judgment entered this date.

This 13th day of March, 2017.



Signed By:
Danny C. Reeves  DCR
United States District Judge